UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| COURTNEY TROULLIET | * | CIVIL ACTION NO. 22-5256 |
| | * | |
| VERSUS | * | DIVISION 1 |
| | * | |
| GRAY MEDIA GROUP, INC. | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| | * | |
| | * | |
| ********************************* | * | |

ORDER AND REASONS

Before the Court is defendant Gray Media Group, Inc.'s Motion to Dismiss the Complaint of plaintiff Courtney Troulliet. (Rec. Doc. 4). Gray's exhaustion of administrative remedies argument can be remedied by a pleading amendment. Further, although Troulliet has failed to allege that she held a bona fide religious belief, she will be allowed an opportunity to amend her Complaint and remedy this deficiency. Her retaliation claim, however, must be dismissed with prejudice because she has not alleged and cannot plausibly allege that her employment was terminated or that Gray refused to take her back because she engaged in a protected activity. Finally, her disability discrimination claim under the Americans with Disabilities Act will dismissed without prejudice because although she has failed to allege a disability, it appears she may be able to remedy this defect with a pleading amendment. Gray's Motion to Dismiss is GRANTED in part and DENIED in part.

Background

This employment discrimination lawsuit arises out of the termination of Courtney Troulliet's employment with Gray Media Group, Inc., on October 1, 2021, when she refused to comply with Gray's requirement that all employees be fully vaccinated against COVID-19. Troulliet had worked for Gray as an account executive at the Fox News affiliate WVUE Fox 8 in

New Orleans since August 2016. She alleges that she excelled at her position and that her performance evaluations demonstrate that she was qualified for her position.

Troulliet admits that Gray offered exemptions from the vaccine requirement for medical or religious reasons and provided forms for employees to request such accommodations. Troulliet submitted both exemption forms on September 8, 2021. She alleges that both exemptions were denied without cause. She alleges that she remained unvaccinated because she would not violate her religious beliefs and because her physicians had informed her that the vaccines were dangerous. Troulliet does not allege what religion she believes in or practices. She does not allege what religious belief the vaccine requirement violated. Further, although she alleges that she suffered from disability discrimination, she does not allege that she had a disability. She alleges merely that she was undergoing in vitro fertilization ("IVF") and appears to allege that this treatment was the basis for her medical exemption request.

Troulliet alleges that Gray could have accommodated her religious beliefs without undue hardship. She submits that she could have continued to telework, as she had been doing successfully from the start of the pandemic. She submits that she could have undergone weekly testing for COVID-19, which she argues would be a more reliable indication of her inability to spread COVID-19. She alleges that she could have been required to submit to testing before attending in-person meetings. She alleges that some of these measures were used with other employees that received exemptions from the vaccine requirement and were similarly situated to her. Troulliet also argues that COVID-19 vaccines were largely ineffective at controlling the spread of COVID-19, especially the newer variants. She insists this was well known by the time Gray enacted its policy. She argues that natural immunity resulting from a prior infection with COVID-19 is more effective and appears to allege that she had natural immunity to COVID-19.

She argues that Gray pursued its vaccine mandate against religious employees and refused to recognize natural immunity as satisfying its immunization requirement. She suggests that discovery will reveal that vaccinated employees spread COVID-19 at higher rates relative to unvaccinated employees.

Troulliet filed the present lawsuit on December 12, 2022. She alleges a religious discrimination claim under Title VII for failure to accommodate; a religious discrimination claim under Title VII for disparate treatment; a retaliation claim under Title VII; and a disability discrimination claim under the Americans with Disabilities Act ("ADA"). The parties consented to proceed before the undersigned Magistrate Judge. Trial has not yet been set.

Presently before the Court is Gray's motion to dismiss. It argues that Troulliet's Complaint must be dismissed because she has failed to allege that she exhausted her administrative remedies. In opposition, Troulliet argues that she filed a charge with the Equal Employment Opportunity Commission on February 16, 2022, and that the EEOC mailed her a right to sue letter on September 14, 2022. Gray responds that even if Troulliet amended her Complaint to allege these facts, she would still not satisfy the exhaustion requirement because she does not allege when she received the right to sue letter.

Gray argues further that Troulliet's religious discrimination claims must be dismissed because she has failed to allege a sincerely held religious belief. In opposition, Troulliet merely directs the Court to her Complaint. Gray argues further that Troulliet's disparate treatment claim should be dismissed because she does not allege that she is a member of a protected class or that Gray treated similarly situated employees outside of her protected class more favorably. Troulliet does not address this argument in opposition. Gray also argues that Troulliet's retaliation claim must be dismissed because she has not alleged that she engaged in a protected activity. It insists

that requesting a religious accommodation does not qualify. Troulliet does not address this argument in opposition. Finally, Gray argues that Troulliet's ADA claim must fail because she has not alleged a disability. It submits that diagnosis with a medical condition is not enough and that Troulliet's request for a medical exemption based on IVF treatment cannot support finding that she had a disability as defined by the ADA because she has not shown that a major life activity was impaired. Troulliet argues in opposition that under the ADA and the Pregnancy Discrimination Act that amended Title VII, Gray had an obligation to consider requests for accommodations made by its employees. She insists that she has adequately plead that Gray failed to engage in the interactive process contemplated by the ADA. She argues that at this stage, she must not be required to show a probability of success. She does not explain how her IVF treatment might qualify as or reveal a medical condition or impairment that limits a major life condition.

Law and Analysis

1. *Standard on a Motion to Dismiss*

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007) (quotation marks and ellipsis omitted). Accordingly, Rule 12(b)(6) allows a defendant to move for expeditious dismissal when a plaintiff fails to state a claim upon which relief can be granted. In ruling on a 12(b)(6) motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re* Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). Further, "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the

speculative level." Id. (citation, footnote, and quotation marks omitted). On that point, the United

States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows
> the court to draw the reasonable inference that the defendant is liable for the
> misconduct alleged. The plausibility standard is not akin to a "probability
> requirement," but it asks for more than a sheer possibility that a defendant has acted
> unlawfully. Where a complaint pleads facts that are merely consistent with a
> defendant's liability, it stops short of the line between possibility and plausibility of
> entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

   2. *Exhaustion of Remedies*

   "It is well-settled that courts have no jurisdiction to consider Title VII claims as to which

the aggrieved party has not exhausted administrative remedies." Nat'l Ass'n of Gov't Employees

v. City Pub. Serv. Bd. of San Antonio, Tex., 40 F.3d 698, 711 (5th Cir. 1994). Thus, "[t]he scope

of a Title VII complaint is limited to the scope of the EEOC investigation which can reasonably

be expected to grow out of the charge of discrimination." Carey v. State of Louisiana, No. CIV.A.

00-2657, 2001 WL 1548962, at *5 (E.D. La. Dec. 5, 2001) (quoting Thomas v. Texas Dep't of

Criminal Justice, 220 F.3d 389, 395 (5th Cir. 2000)). Similarly, "an employee must comply with

the ADA's administrative prerequisites prior to commencing an action in federal court against her

employer for violation of the ADA." Dao v. Auchan Hypermarket, 96 F.3d 787, 789 (5th Cir.

1996). The employee must file a charge with the EEOC within 300 days after the alleged unlawful

employment practice. Conner v. Louisiana Dep't of Health & Hosps., 247 F. App'x 480, 481 (5th

Cir. 2007); Boudreaux v. St. Charles Mosquito Control, Inc., No. CIV.A. 09-7789, 2010 WL

2854276, at *5 (E.D. La. July 19, 2010). Once the EEOC issues a right to sue letter, the plaintiff

has 90-days from receipt of the notice to file a federal lawsuit based on the claims in the charge.

Price v. Choctaw Glove & Safety Co., 459 F.3d 595, 598 (5th Cir. 2006); Garcia v. Penske

Logistics, L.L.C., 631 F. App'x 204, 207–08 (5th Cir. 2015). The plaintiff's lawsuit "is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Carey v. State of Louisiana, No. CIV.A. 00-2657, 2001 WL 1548962, at *5 (E.D. La. Dec. 5, 2001) (quoting Thomas v. Texas Dep't of Criminal Justice, 220 F.3d 389, 395 (5th Cir. 2000)). Gray complains that it cannot challenge whether the lawsuit exceeded the scope of the EEOC investigation and the charges raised there because Troulliet failed to plead same in her Complaint or her opposition brief.

Although Troulliet does not plead that she has exhausted her administrative remedies, it appears her complaint could be amended to remedy this deficiency. She asserts in opposition that she filed her EEOC charge on February 16, 2022, and that a notice of right to sue was issued on September 14, 2022. As Gray points out, she does not say when she received the notice. But the applicable law provides that when the date of receipt is unknown or disputed, the court will presume receipt seven days after the EEOC mailed the letter.[1] Taylor v. Books A Million, Inc., 296 F.3d 376, 379–80 (5th Cir. 2002). The court finds that Troulliet should be allowed an opportunity to amend her complaint to allege facts that support finding that she exhausted her administrative remedies, both as to critical dates and as to claims asserted at the EEOC.

*3. Religious Discrimination under Title VII*

Under Title VII of the Civil Rights Act, it is unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "The term 'religion' includes all aspects of

---

[1] If the Court applies this presumption here, Ms. Troulliet had to file her complaint by December 20, 2022, a deadline she met by filing suit on December 12, 2022. Of course, even if she had received the notice on the date it was issued, her Complaint would have been timely filed on December 12, 2022—less than 90 days after September 14, 2022.

religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." Id. at § 2000e(j).

The court uses a burden-shifting framework to analyze a claim for failure to accommodate a religious observance. Davis v. Fort Bend Cnty., 765 F.3d 480, 485 (5th Cir. 2014). The employee must establish a prima facie case of religious discrimination by alleging that "(1) she held a bona fide religious belief, (2) her belief conflicted with a requirement of her employment, (3) her employer was informed of her belief, and (4) she suffered an adverse employment action for failing to comply with the conflicting employment requirement." Id. If she establishes a prima facie case, the burden shifts to the employer "[t]o demonstrate either that it reasonably accommodated the employee, or that it was unable to reasonably accommodate the employee's needs without undue hardship." Id. (quoting Antoine v. First Student, Inc., 713 F.3d 824, 831 (5th Cir. 2013)).

"Bona fide religious beliefs include 'moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views.'" Id. (quoting 29 C.F.R. § 1605.1). "The specific religious practice must be examined rather than the general scope of applicable religious tenets . . . ." Tagore v. United States, 735 F.3d 324, 328 (5th Cir. 2013). Importantly, "[t]he validity of what [the plaintiff] believes cannot be questioned" United States v. Seeger, 380 U.S. 163, 184 (1965). The Fifth Circuit cautions that "judicial inquiry into the sincerity of a person's religious belief 'must be handled with a light touch, or judicial shyness.'" Davis, 765 F.3d at 486 (quoting Tagore, 735 F.3d at 328 (5th Cir. 2013)). Nonetheless, the United States Supreme Court has explained that although the determination of whether a belief is "religious" is a delicate question, "the very concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interests."

<u>Wisconsin v. Yoder</u>, 406 U.S. 205, 215–16 (1972). Beliefs based on "purely secular considerations" or that are "merely a matter of personal preference" are not protected. <u>Id.</u> Instead, the "claims must be rooted in religious belief." <u>Id.</u>

At the motion to dismiss stage, an employee is not required to "submit evidence to establish a prima facie case of discrimination," however, she must "plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make [her] case plausible." <u>Chhim v. Univ. of Texas at Austin</u>, 836 F.3d 467, 470 (5th Cir. 2016). "The 'ultimate question' in a Title VII disparate treatment claim remains 'whether a defendant took the adverse employment action against a plaintiff *because of* her protected status.'" <u>Raj v. Louisiana State Univ.</u>, 714 F.3d 322, 331 (5th Cir. 2013).

Here, Gray argues that Troulliet has failed to allege a bona fide religious belief. Gray points out that Troulliet has not alleged any details about her sincerely held religious beliefs. Instead, Gray argues, Troulliet summarily states that the COVID-19 vaccine violates her religious beliefs. Yet, Gray adds, she does not allege what those beliefs are or what religion or church she is a member of, or even that she believes in any particular higher power. Nor does she reference any religious teachings or scripture.

Gray argues further that Troulliet has not satisfied the second prong required to establish her prima facie case of religious discrimination because she does not adequately plead that her religious belief conflicted with Gray's vaccine policy. Finally, Gray argues that Troulliet has not satisfied the third prong because she has failed to plead that Gray was informed of her belief. Gray admits that Troulliet has plead that she submitted a religious accommodation request to Gray, but insists that this is insufficient and that she must plead that Gray was informed of her bona fide religious belief and how the belief conflicted with the vaccine policy.

Gray argues that most of Troulliet's complaint discusses the safety risks associated with the COVID-19 vaccine, the vaccine's inefficacy, the superiority of natural immunity, and the collusion between big pharma and the federal government. It notes that she also alleges that Gray's vaccine policy was motivated by advertising and virtue-signaling goals. It argues that all this reinforces the conclusion that Troulliet's beliefs about the vaccine were not religious, but instead based on her secular, personal, and medical beliefs.

Gray argues further that Troulliet cannot state a claim for disparate treatment because she has not alleged any facts to support finding that she is a member of a protected class and because she has failed to sufficiently plead that Gray treated similarly situated employees outside of her protected class more favorably.

In opposition, Troulliet merely cites her Complaint, which she says "is an ode to violations" of her rights. She insists that she will rely on the facts alleged in the Complaint to show that she has a sincerely held religious objection that precludes her from complying with Gray's vaccine program. She does not explain her religious belief further. She insists that she has plainly alleged that she raised her objections with Gray and that her inability to comply with the vaccine policy is the basis for Gray's termination of her employment.

The Court finds that Troulliet's Complaint, as presently plead, fails to allege sufficient facts to state a plausible claim for religious discrimination. She has failed to allege with any particularity that she held a bona fide religious belief, much less one that conflicted with a requirement of her employment. Without a bona fide religious belief, there is no basis to conclude that she is a member of a protected class. At most, she alleges that she desired a religious exemption from Gray's vaccine requirement. She relies merely on her conclusory assertions that she remained unvaccinated because she would not violate her religious beliefs and that she was terminated as a

direct result of her religious beliefs. But she never claims that she held a religious belief, nor does she allege what that belief was. As Gray correctly points out, Troulliet's Complaint is replete with medical arguments why Gray's policy was inadvisable and accusations that Gray was motivated by virtue signaling. These allegations suggest that Troulliet's beliefs regarding the COVID-19 vaccine were based on purely secular considerations or were merely a matter of personal preference. Such beliefs cannot form the basis of a religious discrimination claim.[2] The Court finds that from the facts alleged in the Complaint, there is simply no way to conclude that Troulliet actually held a religious belief that conflicted with Gray's vaccine policy.

Although Troulliet declined to describe a bona fide religious belief in her opposition memorandum, the Court finds that Troulliet should be allowed an opportunity to amend her Complaint to allege a sincerely held religious belief that conflicted with Gray's vaccine policy, if she is able to do so.[3] As the Fifth Circuit has observed:

> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

---

[2] Courts in other circuits have held as much under similar circumstances. For example, the Third Circuit Court of Appeals affirmed dismissal of the plaintiff's amended complaint, finding that plaintiff had not alleged any facts to support finding that her opposition to the flu vaccine was religious. Brown v. Children's Hosp. of Philadelphia, 794 F. App'x 226, 227–28 (3d Cir. 2020). The court of appeals observed "[a]t one point, [plaintiff] claimed that the vaccine was unnecessary for her because she scrupulously washed her hands, but any 'concern that the flu vaccine may do more harm than good ... is a medical belief, not a religious one.'" Id. (quoting Fallon v. Mercy Cath. Med. Ctr. of Se. Pennsylvania, 877 F.3d 487, 492 (3d Cir. 2017)). Similarly, the District Court for the Middle District of Pennsylvania held that the plaintiff's "statement—which centers on her free will and belief that Covid-19 vaccines and tests are harmful and unnecessary—fails to establish sincere religious opposition . . . ." Finkbeiner v. Geisinger Clinic, No. 4:21-CV-01903, 2022 WL 3702004, at *4 (M.D. Pa. Aug. 26, 2022). The court rejected her reliance on "her belief that she has a 'God given right to make [her] own choices" because this was only an "isolated moral teaching" and not a "comprehensive system of beliefs about fundamental or ultimate matters." Id.  The court also declined to find that everything the plaintiff believed about healthy living was a religious practice. Id.

[3] Gray also argues that Troulliet has failed to allege that it was informed of Troulliet's bona fide religious belief because she has not alleged a bona fide religious belief. Indeed, although she alleges she submitted a religious exemption request, she has not alleged that this request notified Gray of a bona fide religious belief. To establish her prima facie case, Troulliet will have to show facts to support such a finding. At this motion to dismiss stage, though, Troulliet need not establish every element of her prima facie case. Chhim, 836 F.3d at 470.

Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002). It appears that Troulliet intends to allege that Gray's vaccine policy violated her religious beliefs, and she may be able to allege facts to support finding a bona fide religious belief that conflicted with Gray's vaccine policy. As such, Troulliet's Title VII religious discrimination claim for failure to accommodate and/or disparate treatment[4] shall be dismissed without prejudice and Troulliet shall be allowed an opportunity to amend.

4. *Retaliation*

Gray argues that Troulliet cannot state a claim for retaliation under Title VII because she has not alleged that she engaged in a protected activity. It argues that making a request for religious accommodation (though it denies she did so based on a sincerely held religious belief) does not constitute a protected activity. In her Complaint, she alleges that she engaged in a protected activity when she sought a religious accommodation. Troulliet does not respond to Gray's argument and request for dismissal of her retaliation claim. It appears, therefore, that she has abandoned the retaliation claim.

In any event, the Court finds that Troulliet has failed to state a claim for retaliation. Title VII makes it unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a); see Ackel v. Nat'l Commc'ns, Inc., 339 F.3d 376, 385 (5th Cir. 2003). Courts have described protected activities as those falling under either

---

[4] Troulliet does not address Gray's argument that her disparate treatment claim must be dismissed because she has not plead facts sufficient to find that Gray treated other similarly situated employees differently. It appears that Troulliet has abandoned any claim based on Gray's treatment of similarly situated employees. The Court further notes that in her Complaint, she admits that "Gray did use some form of these accommodation measures when it granted exemption requests to some employees similarly situated to Mrs. Troulliet." Rec. Doc. 1, ¶ 37.

the "opposition" clause or the "participation" clause, respectively. E.E.O.C. v. Rite Way Serv., Inc., 819 F.3d 235, 239 (5th Cir. 2016). There is no dispute that Troulliet is not invoking the participation clause because she does not allege that she made a charge, testified, assisted, or participated in a Title VII proceeding. Gray does not address whether requesting a religious accommodation would amount to protected "opposition" activity. Under certain circumstances, it might. E.g., Equal Emp. Opportunity Comm'n v. U.S. Steel Tubular Prod., Inc., No. 4:14-CV-02747, 2016 WL 11795815, at *16 (S.D. Tex. Aug. 4, 2016).

Assuming that Troulliet's request for religious accommodation amounted to protected activity, she still cannot state a claim for retaliation. Troulliet appears to allege two adverse employment actions resulting from her request for a religious accommodation. First, she claims was terminated on this basis. To the contrary, she insists in her opposition memorandum that she "has plainly alleged that her religious objections and inability to comply with Defendant's Vaccine Mandate was the basis for defendant's adverse employment action against her (see Paragraphs 9, 31, 34)." Rec. Doc. 7, at 4-5. Her conclusory allegation that she was "also terminated" for seeking a religious accommodation is not supported by any fact and is directly contrary to what appears to be the theory of her case. She does not allege a single fact to support finding that it was the request for religious accommodation that resulted in her termination. As she herself argues, she was terminated because she would not comply with Gray's vaccine policy. While this may amount to religious discrimination if she refused to comply on the basis of a bona fide religious belief, it does not amount to retaliation for engaging in a protected activity.

Troulliet also alleges that as a result of her request for religious accommodation, Gray refused to admit its mistake and take Troulliet back. However, Troulliet does not allege she ever applied to return to Gray. E.g., Fields v. Hallsville Indep. Sch. Dist., 906 F.2d 1017, 1021 (5th Cir.

1990) ("One of these requirements is that a plaintiff apply for a position for which she is qualified."); Morris v. Fru-Con Const. Corp., No. CIV.A. C-05-565, 2006 WL 2794932, at *4 (S.D. Tex. Sept. 26, 2006) ("[P]laintiff must demonstrate that he ***applied*** for a position for which he was qualified."). Moreover, even had she included such an allegation, her Complaint cannot support finding that Gray's purported failure to re-hire her was related to her request for a religious accommodation. To the contrary, she alleges in support of her retaliation claim that Gray "had made up its mind to purge as many unvaccinated religious employees as it believed it could . . . ." Once again, she claims that Gray was motivated by religious discrimination, not in retaliation for Troulliet engaging in protected activity.

For all the foregoing reasons, the Court finds that Troulliet's retaliation claim must be dismissed with prejudice.

5. *Disability Discrimination*

"The ADA prohibits an employer from discriminating against a 'qualified individual with a disability on the basis of that disability.'" E.E.O.C. v. LHC Grp., Inc., 773 F.3d 688, 694 (5th Cir. 2014) (quoting 42 U.S.C. § 12112). "The term "disability" means, with respect to an individual--(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))." 42 U.S.C. § 12102(1).  Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." Id.  at § 12102(2)(A). "Merely having an impairment or being diagnosed with a condition does not make one disabled for purposes of the ADA; the plaintiff must show that the impairment or condition limits a major life activity." Thomas v. Burrows, No. CV

22-3511 DIV. (2), 2023 WL 1783694, at *6 (E.D. La. Feb. 6, 2023) (holding that plaintiff's diagnosis with anxiety and depression was not enough to support finding that she has a disability under the ADA).

Here, Gray argues that Troulliet has failed to allege that she is disabled within the meaning of the ADA or that Gray regarded her as disabled. She alleges only that she was in the middle of IVF treatment, but does not allege that such treatment was a physical or mental impairment that substantially limits one or more major life activities. Gray argues further that even if Troulliet had plead that she is disabled, she has failed to allege that she was subject to an adverse employment action because of her disability.

In opposition, Troulliet argues that she has clearly stated that she had to undergo IVF treatment due to her inability to conceive. She insists that Gray had a statutory obligation under the ADA and the Pregnancy Discrimination Act (which she invokes for the first time) to consider requests for accommodations made by its employees due to medical conditions.

The Court finds that Troulliet has failed to state a claim for disability discrimination under the ADA because she has not plausibly alleged a disability. She alleges only that she was undergoing IVF and that she requested a medical exemption from the vaccine requirement. She does not allege any impairment that substantially limits one or more major life activities. Therefore, the Court cannot plausibly find a disability that would support a discrimination claim under the ADA.

In Troulliet's opposition memorandum, though, she asserts that she was undergoing IVF treatment "due to her inability to conceive" and that she had "discussed this" with Gray prior to submitting the exemption request along with a doctor's note. The United States Supreme Court has held "that reproduction is a major life activity for the purposes of the ADA." Bragdon v.

14

Abbott, 524 U.S. 624, 639 (1998). Based on Troulliet's arguments in opposition, it appears that she may be able to allege facts sufficient to support finding that she had a disability under the ADA. Accordingly, her ADA claim will be dismissed without prejudice and she will be allowed an opportunity to amend.

Conclusion

Gray's Motion to Dismiss (Rec. Doc. 4) is GRANTED in part and DENIED in part. Troulliet's claim for religious discrimination under Title VII and her claim for disability discrimination under the ADA are dismissed without prejudice: She shall be allowed to file an amended complaint that adequately alleges facts to support finding that she exhausted her administrative remedies (including specification of the claims raised before the EEOC), that she held a bona fide religious belief that conflicted with Gray's vaccine policy, and that she had a disability as defined by the ADA within 14 days. Troulliet's retaliation claim is dismissed with prejudice.

New Orleans, Louisiana, this 11th day of April, 2023.

Janis van Meerveld
United States Magistrate Judge

15